### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF KENTUCKY
### COVINGTON DIVISION

IN RE:

JIMMY L. KISKADEN and                                      CASE NO. 16-20207
TINA M. KISKADEN                                                CHAPTER 13

      DEBTORS
_____

JIMMY L. KISKADEN                                                PLAINTIFF

v.                                                                    ADV. NO. 16-2008

LVNV FUNDING, LLC                                            DEFENDANT

---

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Creditor/Defendant LVNV Funding, LLC's Motion to Stay or Dismiss Pending Arbitration [ECF No. 14 ("Motion")]. Debtor/Plaintiff Jimmy L. Kiskaden commenced this adversary proceeding by filing the Class Action Complaint [ECF No. 1 ("Complaint")], both individually and on behalf of a defined class of persons, asserting claims against Creditor for fraud and violations of the Kentucky Consumer Loan Act, the Kentucky Consumer Protection Act, and the Fair Debt Collection Practices Act, seeking damages as well as injunctive and declaratory relief. In response, Creditor filed the Motion, requesting that the Court enforce a binding arbitration provision and dismiss Debtor's claims against Creditor or, in the alternative, enter an order staying this adversary proceeding and compelling Debtor to pursue his claims against Creditor in arbitration. For the following reasons, the Court will compel Debtor to arbitrate Counts 2, 3, and 4, holding them in abeyance here, and deny the Motion as to Counts 1, 5, and 6.

## JURISDICTION AND VENUE

This Court has jurisdiction over this adversary proceeding.  28 U.S.C. § 1334(b).  Venue is proper in this District.  28 U.S.C. § 1409.  The core/non-core nature of Debtor's claims in the Complaint is addressed below.

## BACKGROUND

On or about June 25, 2007, Debtor executed a First Bank of Delaware Promissory Note and Disclosure Statement, which states that it was between First Bank of Delaware ("FBD") and Debtor.  Creditor filed a copy of the Promissory Note and Disclosure Statement as Exhibit 2 to the Motion [ECF No. 14-3 ("Loan Agreement")], and Debtor has not contested its accuracy.  The Loan Agreement contemplates that FBD would loan Debtor the sum of $2,525.00, and Debtor would repay that sum, plus interest accruing at 96.00% per annum, via one payment of $258.15, forty monthly payments of $216.55, and one payment of $215.49 ("Loan").  As a condition of the Loan, Debtor was required to authorize the monthly payments to be withdrawn from his bank account via automatic debit.  The Loan payments total $9,135.64 if paid as scheduled, in addition to a $75.00 origination fee.

The Loan Agreement contains several terms regarding arbitration ("Arbitration Provisions"), including:

> **Agreement to Arbitrate.**  The parties agree that any Dispute, except as provided below, will be resolved by Arbitration.  This agreement is governed by the Federal Arbitration Act (FAA), 9 U.S.C.S. § 1 et seq. and the substantive law of the State of Delaware (without applying its choice-of-law rules).

[Loan Agmt. p. 3.][1]

The Loan Agreement also contains provisions governing the parties' choice of arbitrator, arbitration costs, location, governing law, and judicial review.  The Arbitration Provisions are to

---

[1] The Loan Agreement defines "Dispute" as "any controversy or claim between me and [FBD] or the Holder of the Note."  [Loan Agmt. p. 3.]

survive, among other things, "the bankruptcy of any party . . . and . . . any transfer, sale or assignment of [Debtor's underlying] Note, or any amounts owed on [his] account, to any other person or entity." [*Id.* p. 4.] Debtor had the right to opt out of the Arbitration Provisions within sixty days of the date that his Loan was funded. Debtor does not assert that he opted out.

Debtor alleges that, within days of entering into the Loan Agreement, he was advised the Loan had been assigned to CashCall, Inc. ("CashCall"). Debtor made payments to CashCall through August 2007. After Debtor could no longer make payments on the Loan, CashCall continued to draft Debtor's checking account, causing Debtor to incur overdraft charges. CashCall later transferred the receivable underlying the Loan to Sherman Originator III, LLC, which ultimately transferred all of its right, title, and interest in and to the Loan to Creditor on December 9, 2011.

## PROCEDURAL HISTORY

Debtor filed this current chapter 13 case in this Court on February 25, 2016. Creditor filed its proof of claim in the amount of $6,966.39 on June 22, 2016, claiming the debt is for a credit card and that the claim amount includes no interest. Debtor filed his Objection to Proofs of Claim of LVNV Funding, LLC on June 30, 2016, and he filed his Amended Objection to Proof of Claim of LVNV Funding, LLC on August 4, 2016. The Debtor's Amended Objection came on for hearing before this Court on October 18, 2016. Debtor's counsel requested that the Objection be held in abeyance pending the outcome of this adversary because the declaratory relief sought herein would be dispositive of that contested matter. Creditor opposed abeyance, suggesting a continuance instead. The Court continued the Objection generally, subject to the parties' discretion to tender any desired agreed orders.

Debtor commenced this adversary proceeding on October 12, 2016.  Debtor's Complaint alleges that FBD and CashCall engaged in a scheme to avoid Kentucky usury and licensure laws. As part of that scheme, Debtor alleges that FBD and another state-chartered bank issued high-interest loans ("FBD Loans") to Kentucky residents that CashCall immediately purchased. CashCall then took the position that it was exempt from usury and licensing laws of any state other than those where the non-Kentucky banks did business because it was an assignee of those banks.  Debtor asserts that Creditor is a party to and is liable for that scheme as the holder of Debtor's Loan.

The Complaint asserts six counts against Creditor.  Counts 1 and 6 seek declaratory judgments.  Count 1 seeks a declaration that the Loan is void under the Kentucky Consumer Loan Act ("KLCA"), and Count 6 seeks a declaration that Creditor filed materially false proofs of claim that constituted abuses of the bankruptcy claims process.  Counts 2, 3, and 4 seek affirmative relief.  Count 2 asserts that Creditor's loan practices violated the Kentucky Consumer Protection Act ("KCPA") and seeks damages.  Count 3 asserts that Creditor committed common law fraud and seeks monetary damages and declaratory and injunctive relief.  Count 4 asserts that Creditor's collection activities violated the federal Fair Debt Collection Practices Act ("FDCPA") and seeks damages, costs, and attorney's fees.  Count 5 appears to frame remedies predicated upon Debtor's success under any of Counts 1-4 and does not state a specific cause of action.

Debtor commenced this adversary proceeding as a class action "on behalf of himself and all others similarly situated."  [Complaint ¶ 30.]  Specifically, Debtor seeks to represent all Kentucky residents "who executed a promissory note with either [FBD or the other non-Kentucky bank] who subsequently filed a petition for relief under the provisions of title 11

4

in the Eastern District of Kentucky, and in which [Creditor] later filed proofs of claim for such loans in the bankruptcy proceedings after having purchased such loans from CashCall." [*Id.* at ¶ 31.] Debtor asserts that the proposed class involves hundreds, if not thousands, of members. The Court held a hearing on Creditor's Motion on January 10, 2017.

Creditor requests that this Court enforce the Arbitration Provisions pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"), and dismiss Debtor's claims against it or, alternatively, enter an order staying this proceeding and compelling Debtor to pursue his claims against it in arbitration. Debtor argues that this Court should retain jurisdiction over his claims because there is an inherent conflict between arbitration and the purposes of the Bankruptcy Code that satisfies the U.S. Supreme Court's exception to compelling arbitration set forth in *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

## ANALYSIS

The Arbitration Provisions incorporate the FAA. "Congress enacted the FAA in 1925 pursuant to its power to regulate interstate commerce 'to ensure judicial enforcement of privately made agreements to arbitrate,' and 'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate.'" *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985)). "The FAA creates 'a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 693 (6th Cir. 2012) (quoting *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Under the FAA, written commercial contract provisions to settle a controversy arising out of the contract by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of [such] contract." 9 U.S.C. § 2. "The [FAA] also

provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, § 3; and it authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with the arbitration agreement, § 4." *McMahon*, 482 U.S. at 226.  "The [FAA] thus establishes a 'federal policy favoring arbitration' . . . requiring that '[courts] rigorously enforce agreements to arbitrate.'" *Id.* (citations omitted).

"Like any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *McMahon*, 482 U.S. at 226.  The party opposing arbitration bears the burden "to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 227 (citations omitted).  "If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent 'will be deducible from [the statute's] text or legislative history,' . . . or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* (citations omitted).

Against that background, a court must perform four tasks when evaluating whether to grant a motion to compel arbitration under the FAA:

> 1) it must determine whether the parties agreed to arbitrate; 2) it must determine the scope of the arbitration agreement; 3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and 4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Uszak v. AT & T Mobility Services LLC*, 658 F. App'x 758, 761 (6th Cir. 2016) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

I.      **There is no dispute that the Arbitration Provisions are valid and Debtor's claims are within their scope.**

Arbitrability is the threshold inquiry:

Although the [U.S. Supreme] Court has . . . long recognized and enforced a "liberal federal policy favoring arbitration agreements," . . . it has made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the "*question of arbitrability*," is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise."

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citations omitted) (emphasis in original). Thus, "[b]efore compelling an unwilling party to arbitrate [under the FAA], the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *AT & T Techs. v. Comms. Workers of Am.,* 475 U.S. 643, 649 (1986)). Here, Debtor does not dispute the Arbitration Provisions' validity or that the claims set forth in his Complaint fall within their scope.

II.     **The *McMahon* Exception applies to some, but not all, of Debtor's claims.**

The Court next considers whether Congress intended any of Debtor's claims to be nonarbitrable. *Uszak*, 658 Fed. App'x at 761. A court may override the FAA's mandate that arbitration agreements be enforced if the party opposing arbitration demonstrates a contrary congressional command. *McMahon*, 482 U.S. at 226-27. Here, Debtor has the burden to show that "Congress intended to preclude a waiver of judicial remedies for [his] statutory rights at issue [in this case]." *Id.* at 227. Congressional intent may be evidenced by a statute's text, the statute's legislative history, or "an inherent conflict between arbitration and the statute's underlying purposes." *Id.* "Whether the *McMahon* standard is met determines whether the court

7

has the discretion to deny enforcement of an otherwise applicable arbitration clause." *In re Mintze*, 434 F.3d 222, 230 (3d. Cir. 2006) (citations omitted).  "The starting point is *McMahon*." *Id.*

"If the statute's text or legislative history implies a congressional limitation or prohibition of the FAA, the arbitration agreement will not be strictly enforced."  *In re No Place Like Home, Inc.*, 559 B.R. 863, 871 (Bankr. W.D. Tenn. 2016).  "However, if no statutory text or legislative history exists on this topic, the court must then look to the third prong of the *McMahon* Framework:  whether there is an inherent conflict between each purpose of the two federal acts." *Id.*  Of the three indicia of congressional intent, Debtor asserts that only the third applies here: that an inherent conflict exists between the proposed arbitration and the Bankruptcy Code's underlying purpose.

The Sixth Circuit has not addressed the *McMahon* exception in the bankruptcy context. However, opinions from other circuits and a bankruptcy court within this circuit provide instructive analyses.  Some cases finding no inherent conflict between arbitration and the Bankruptcy Code's underlying purpose focus on the lack of an underlying bankruptcy issue impacting plaintiff's claims.  *See, e.g., Mintze*, 434 F.3d at 231-32 (holding that because debtor did not raise statutory claims created by the Bankruptcy Code, there was no bankruptcy issue to be decided and no inherent conflict with arbitration); *No Place Like Home*, 559 B.R. at 875 (finding no underlying bankruptcy issue to be determined in a case involving the Fair Labor Standards Act and contract law and, thus, no inherent conflict).

In contrast, cases finding a *McMahon* conflict concluded that the claims at the center of the dispute were directly related to the Bankruptcy Code.  *See, e.g., In re Gandy*, 299 F.3d 489, 495-500 (5th Cir. 2002) (affirming bankruptcy court's refusal to enforce arbitration provision

because three of debtor's causes of action derived entirely from rights conferred by the Code, those causes of action predominated, and their resolution implicated matters central to the purposes and policies of the Code); *In re Eber*, 687 F.3d 1123, 1130-31 (9th Cir. 2012) (holding that claims were core nondischargeability claims regardless of how they were pled and that "[a]llowing an arbitrator to decide issues that are so closely intertwined with dischargeability would 'conflict with the underlying purposes of the Bankruptcy Code."); *In re White Mountain Mining Co., L.L.C.*, 403 F.3d 164, 169 (4th Cir. 2005) (affirming bankruptcy court's refusal to compel arbitration of core claim involving advances debtor owed to plaintiff because of an inherent conflict between arbitration and the Code).

Particularly instructive is the Fourth Circuit's analysis in *Moses v. CashCall, Inc.*, 781 F.3d 63 (4th Cir. 2015) (per curiam), because the complaint therein alleged a scheme similar, if not identical, to that alleged here and asserted some of the same causes of action raised in Debtor's Complaint.  The debtor/plaintiff in *Moses* borrowed $1,000 from Western Sky Financial, LLC prepetition and promised to repay $1,500 plus 149% interest.  The loan agreement specified that any dispute would be resolved by arbitration.  CashCall, the loan servicer, filed a proof of claim seeking to recover on that loan in debtor's chapter 13 bankruptcy case.  Debtor objected to the claim on the ground that the loan was illegal and void.  She also filed an adversary proceeding against CashCall seeking a declaration that the loan was illegal and void under North Carolina law and seeking damages for CashCall's illegal debt collection activities under the North Carolina Debt Collection Act.  CashCall sought to dismiss or stay the adversary proceeding and compel arbitration.  The bankruptcy court denied the arbitration request *in toto*, and CashCall appealed.  The district court affirmed the bankruptcy court's decision, and CashCall appealed again.

9

The Fourth Circuit held that debtor's declaratory judgment claim should not be sent to arbitration, but her damages claim should.  The Fourth Circuit found debtor's declaratory judgment claim to be:  (i) statutorily core under 28 U.S.C. § 157(b)(2)(B) because it involved the allowance or disallowance of claims against the estate; and (ii) constitutionally core under *Stern* because the loan's validity would "'necessarily be resolved' in adjudicating CashCall's proof of claim and [debtor's] objections thereto."  *Moses* at 70.  The court found that debtor's damages claim was statutorily core under 28 U.S.C. § 157(b)(2)(C) (as a counterclaim by the estate against a person filing a claim against the estate), but not constitutionally core because it would not be resolved in the claims allowance process.  *Id.* at 70-71.

The Fourth Circuit concluded that debtor's declaratory judgment claim should not be sent to arbitration because "forcing [debtor] to arbitrate her constitutionally core claim would inherently conflict with the purposes of the Bankruptcy Code . . . ."  *Id.* at 73.  It was "apparent that resolution of [debtor's] claim that the Loan Agreement . . . was illegal could directly impact claims against her estate and her plan for financial reorganization, notwithstanding that the plan [had already been confirmed]."  *Id.* at 72.  Conversely, the Fourth Circuit found no inherent conflict as to debtor's state law damages claim, the resolution of which would merely augment debtor's estate.  In his concurrence, Judge Gregory reasoned:

> Although the success or failure of the non-core claim may have ancillary affects on [debtor's] bankruptcy—primarily through the enlargement of the underlying estate due to any damages received—any such results are simply too attenuated, and indeed extrinsic to the bankruptcy, to constitute an "inherent conflict" with the Bankruptcy Code's purpose of facilitating an efficient reorganization.

*Id.* at 82 (Gregory, J., concurring).  As a result, the bankruptcy court had no discretion decline to enforce the arbitration provision as to the damages claim and erred by not compelling arbitration.

10

With guidance from *Moses*, the Court will first identify the core/non-core nature of Debtor's claims. Next, the Court will determine whether there is an inherent *McMahon* conflict between arbitration of Debtor's claims and the underlying purposes of the Bankruptcy Code. If so, the Court will address whether to exercise its discretion to decline to enforce the Arbitration Provisions.

### A. Debtor's claims are all statutorily core, but only his claims in Counts 1 and 6 are constitutionally core under *Stern*.

Bankruptcy judges are given the authority to "hear and determine . . . all core proceedings arising under title 11 . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). "Core proceedings" include proceedings to determine "(B) allowance or disallowance of claims against the estate . . ." and "(C) counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(B), (C). Bankruptcy courts also may hear non-core proceedings that otherwise are related to cases under title 11, but they cannot finally resolve them and instead must submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1).

"The Supreme Court has modified these statutory assignments of responsibility, holding that Article III of the Constitution prohibits bankruptcy courts from issuing final orders regarding statutorily core claims unless they 'stem[ ] from the bankruptcy itself or would necessarily be resolved in the claims allowance process.'" *Moses*, 781 F.3d at 70 (quoting *Stern*, 564 U.S. at 499). Thus, even though a claim may be "statutorily core" and subject to a bankruptcy court's jurisdiction under 28 U.S.C. § 157, if it is not also "constitutionally core" under *Stern*, a bankruptcy court cannot render a final decision on it absent party consent. Refining its holding in *Stern,* the Supreme Court "subsequently held that when a bankruptcy court is faced with a claim that is *statutorily* core but *constitutionally* non-core—a so-called 'Stern claim'—it must

treat the claim as if it were statutorily non-core, submitting proposed findings of fact and conclusions of law to the district court for *de novo* review." *Id.* (citing *Exec. Benefits Ins. Agency v. Arkison*, — U.S. —, 134 S. Ct. 2165, 2173 (2014) (emphasis in original).

Count 1 of the Complaint seeks a declaration that Debtor's Loan is void and unenforceable under the KCLA.  Debtor alleges that Creditor does not have a license to engage in the business of making loans in Kentucky as required by K.R.S. § 286.4-420, that the Loan charges an interest rate higher than the 8% maximum allowed under K.R.S. § 360.010, and that any loan issued by Creditor as an unlicensed lender is void and unenforceable under K.R.S. § 286.4-991(1).  Count 1 seeks only a declaration, not any damages or other monetary relief.

Count 1 is both statutorily and constitutionally core.  Creditor filed a proof of claim against Debtor's estate based on the Loan.  Count 1 would be resolved in the claim allowance process, to wit:  if the Loan is void under the KCLA, Creditor will not hold an allowed claim in Debtor's chapter 13 proceeding.  Count 1 does not seek affirmative relief that would augment Debtor's bankruptcy estate.  Rather, if Debtor prevails on Count 1, Creditor's claim will be disallowed; if not, Debtor's claim objection will be overruled.  The Count 1 claim therefore would "necessarily be resolved in the claims allowance process" and is squarely within this Court's core jurisdiction.  *Stern*, 564 U.S. at 499.

In Count 6, Debtor seeks a declaration that Creditor unlawfully and fraudulently filed materially false proofs of claim on "illegal" loans in Debtor's (and other Class Members') bankruptcy case(s) and, as a result, Creditor holds any proceeds that it received on account of such claims in trust for the trustees appointed in those cases.  Debtor seeks a related declaration that Creditor's conduct in filing materially false proofs of claim abused the bankruptcy process,

violated the Federal Rules of Bankruptcy Procedure[2] and the Local Rules of this Court, and constitutes an offense against the dignity and authority of this Court.  These declarations necessarily are premised upon a finding under Count 1 that the FBD Loans are illegal and void.

Count 6 is both statutorily and constitutionally core.   Count 6 stems from Debtor's bankruptcy itself and would not exist outside of his bankruptcy case.  It asserts that the very act of filing the proof of claim was wrongful.  Debtor would have no claim that Creditor abused the bankruptcy process or violated the Bankruptcy Rules but for Debtor's bankruptcy filing.

On the other hand, Counts 2, 3, and 4 are statutorily core, but they are infirm under *Stern*. They are not constitutionally core because they do not stem from Debtor's bankruptcy and would not necessarily be resolved in the claims allowance process.  These claims seek only to "augment the estate" by recovering damages for Debtor, not to resolve disputes as to whether Creditor is entitled to a "pro rata share of the bankruptcy res." *Stern*, 564 U.S. at 499 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989)).  Count 2 alleges that Creditor's loan practice violated the KCPA and seeks actual damages pursuant to K.R.S. § 367.200(1).  Count 3 alleges that CashCall made false representations concerning the FBD Loans that Creditor later ratified, Debtor reasonably relied on those misrepresentations to his detriment, and Debtor was harmed as a result.  As a remedy for that fraudulent conduct, Count 3 seeks an award of monetary damages and declaratory and injunctive relief.  Count 4 alleges that Creditor violated the FDCPA by making false and deceptive statements in the course of its collection activities, including attempting to collect on void loans and falsely representing the amount and nature of the FBD Loans in proofs of claim that it filed in Debtor's and the other Class Members' bankruptcies.  Count 4 seeks damages, costs, and attorney's fees.

---

[2] The Federal Rules of Bankruptcy Procedure will hereinafter be referred to as the "Bankruptcy Rules."

Count 5 does not state a cause of action, but rather seeks remedies predicated upon Debtor's success under any of Counts 1 through 4. It seeks an order enjoining Creditor from continuing to collect on the FBD Loans and from receiving payments on such Loans from any bankruptcy trustee in the Eastern District of Kentucky. It also seeks an order that Creditor must provide an accounting of the identities of all Class Members, the funds accepted or transferred from each Member, and the identity of all persons or entities who received those funds and how much they received. Count 5 further seeks an order that Creditor must hold any proceeds that it received from the Class Members on FBD Loan accounts in trust pending final direction of the Court. Finally, Count 5 seeks an order enjoining Creditor from engaging in further business activities violating the KCLA or the KCPA.

Count 5 only provides a framework of remedies for the other counts and does not, alone, state a claim upon which relief can be granted. Whether Debtor is entitled to the remedies described in Count 5 depends upon whether he prevails on the causes of action asserted in Counts 1 through 4 and/or 6. Thus, Count 5 does not assert a cause of action that can be classified as statutorily or constitutionally core or non-core.

In summary, Counts 1 and 6 are statutorily and constitutionally core. Counts 2, 3, and 4 are statutorily core but not constitutionally core under *Stern*. Count 5 only describes remedies to which Debtor may be entitled if he prevails on the other counts and thus asserts neither a core nor a non-core claim.

### B.     The Court has the discretion to decline to enforce the Arbitration Provisions as to Counts 1, 5, and 6, but not Counts 2, 3, and 4.

 "Bankruptcy courts are more likely to have discretion to refuse to compel arbitration of core bankruptcy matters, which implicate 'more pressing bankruptcy concerns.'" *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d. Cir. 2006) (citation omitted). However, "the core

versus non-core distinction . . . 'though relevant, is not alone dispositive' . . . ." *Eber*, 687 F.3d at 1130 (quoting *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation)*, 671 F.3d 1011, 1021 (9th Cir. 2012)).  "It merely determines whether [this Court] has the jurisdiction to make a full adjudication."  *Mintze*, 434 F.3d at 229.  "[E]ven in a core proceeding, the *McMahon* standard must be met—that is a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code."  *Eber* 687 F.3d at 1130 (quoting *Thorpe*, 671 F.3d at 1021); *accord Gandy*, 299 F.3d at 499 (citation omitted) ("Even when a cause of action is derived entirely from the federal rights conferred by the Bankruptcy Code, the bankruptcy court has discretion to deny enforcement of the arbitration clause only when enforcement would conflict with the purpose or provisions of the Code.").

The Fourth Circuit summarized the main policies behind the Bankruptcy Code in *Moses*:

> While arbitration agreements are to be rigorously enforced, bankruptcy too represents a fundamental public policy.  Grounded in the Constitution, bankruptcy provides debtors with a fresh start and creditors with an equitable distribution of the debtor's assets.  To those ends, a principal purpose of the Bankruptcy Code is to provide debtors and creditors with the prompt and effectual administration and settlement of the debtor's estate.  Similarly, a principal purpose of the Bankruptcy Code is also to centralize disputes over the debtor's assets and obligations in one forum, thus protecting both debtors and creditors from piecemeal litigation and conflicting judgments.  Ease and centrality of administration are thus foundational characteristics of bankruptcy law.

*Moses*, 781 F.3d at 72 (internal citations and quotations marks omitted).  Debtor inherently invoked these principles by filing his chapter 13 bankruptcy petition.  For the reasons discussed below, the Court finds that arbitration of Debtor's claims in Counts 1 and 6 would conflict with these underlying purposes of the Code, which gives this Court discretion under *McMahon* to decide not to compel arbitration of those claims.  No such conflict exists with regard to Counts 2,

3, or 4.  The Court therefore must enforce the Arbitration Provisions and compel Debtor to pursue those claims in arbitration because it lacks the discretion to order otherwise.

Debtor's claims in Counts 1 and 6 are directly related to the claims allowance process that Congress established in the Bankruptcy Code and Rules as part of creating a single forum to resolve disputes over Debtor's assets and obligations.  Creditor voluntarily filed a proof of claim in Debtor's bankruptcy case and thereby "invoke[d] the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote [or be heard] on the proposed distribution."  *Gandy*, 299 F.3d at 499 (citation omitted).  As in *Moses*, "[i]t is . . . apparent that resolution of [Debtor's] claim that the Loan Agreement [he] entered into with [Creditor] was illegal could directly impact claims against [Debtor's] estate and [his] plan for financial reorganization, notwithstanding the fact that the plan [has already been confirmed]."  *Moses*, 781 F.3d at 72.  If this Court determines that the Loan is valid, Creditor could seek to share in distributions under Debtor's confirmed chapter 13 plan as an "allowed unsecured creditor."  Compelling arbitration of Debtor's Count 1 claim therefore would be "inconsistent with [the bankruptcy purpose of ] centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the [D]ebtor's case."  *White Mountain*, 403 B.R. at 169 (citation omitted).  This is underscored by the fact that an arbitrator would not have authority to determine the validity of Creditor's proof of claim or its allowance under Debtor's chapter 13 plan.  That determination is squarely within this Court's power under the Code.

Count 6 seeks this Court's review of what Debtor alleges to be a widespread fraud on the Court and abuse of its claims process, which could not occur outside of Debtor's bankruptcy

case.  This Court is uniquely qualified to evaluate violations of the bankruptcy process, and it has

inherent authority to remedy such violations under the Bankruptcy Code and Rules.  *See*

*generally In re John Richards Homes Building Co.*, *L.L.C.*, 552 Fed. App'x 401, 412-16 (6th Cir.

2013) (discussing bankruptcy courts' authority to sanction parties for improper conduct before

the court under 11 U.S.C. § 105(a) and the courts' inherent powers).  Arbitration of Debtor's

Count 6 claim therefore would directly conflict with the bankruptcy purpose of prompt and

effectual administration and settlement of Debtor's estate because that claim arises from the

bankruptcy claims allowance process.

Conversely, the underlying purposes of the Bankruptcy Code do not demonstrate an

inherent conflict with arbitration of Debtor's claims in Counts 2, 3, or 4, which do not involve

issues central to his bankruptcy.  Instead, Counts 2 through 4 assert claims grounded solely in

state or federal non-bankruptcy law that Debtor could pursue without having filed bankruptcy.

The Bankruptcy Court's specialized knowledge and authority are not required to determine

whether Creditor violated the KCPA or FDCPA or whether Creditor perpetrated a common law

fraud.  An arbitrator could make those determinations and craft appropriate remedies without

impacting the administration of Debtor's bankruptcy case.  Additionally, Debtor's confirmed

chapter 13 plan does not rely on any monetary award that he could receive under Counts 2, 3,

or 4 to fund plan payments.  Debtor's bankruptcy estate undoubtedly will benefit if he receives a

damages award, but his case can progress without it.

Nevertheless, Debtor urges this Court not to send Counts 2, 3, or 4 to arbitration, relying

on Judge Niemeyer's dissent in *Moses*, 781 F.3d at 73-77.  Debtor argues that "all of [his] claims

involve a threshold determination that the FBD Loans are illegal and unenforceable" and that

"[s]eparating [his] claims would be inefficient and could result in conflicting outcomes affecting the administration of [his] estate."  [ECF No. 26, p. 6.]

As in *Moses*, it is true that Debtor's claims in this action share a common question: whether Debtor's Loan is illegal and void.  Debtor's *Stern* claims in Counts 2, 3, and 4 are based, in part, on allegations that Creditor sought to collect on an illegal loan, but the loan's validity does not end the inquiry.  The Court or an arbitrator also would be required to determine whether Creditor's conduct regarding the Loan, void or not, violates the KCPA, the FDCPA, or Kentucky's common law prohibition against fraud.  Thus, Debtor's *Stern* claims in Counts 2 through 4 share little overlap with his core claims in Counts 1 and 6, "apart from the question whether the underlying loan was void in the first place."  *Moses*, 781 F.3d at 85 (Gregory, J., concurring).  They each are based on unique bodies of statutory and/or common law and are not inextricably intertwined.

"[T]he fact that [Debtor's] claims may share a question does not mean that arbitrating one of them will pose an inherent conflict with the efficient reorganization of [his] estate."  *Id.* Likewise, "the mere possibility of generic litigation-related exigencies, inherent in the act of litigating in another forum, cannot justify the refusal to arbitrate a non-core claim."  *Id.* at 86. With respect to each claim, Debtor bears the burden of demonstrating congressional intent "to preclude a waiver of judicial remedies for the statutory rights at issue [therein]."  *McMahon*, 482 U.S. at 227.  Debtor's claims in Counts 2, 3, and 4 do not assert core bankruptcy causes of action, and "[w]ith no bankruptcy issue to be decided by [the] Court, [the Court] cannot find an inherent conflict between arbitration of [Debtor's] federal and state consumer protection issues and the underlying purposes of the Bankruptcy Code."  *Mintze*, 434 F.3d at 231-32.  Without an

inherent conflict, the Court does not have the discretion to decline to enforce the Arbitration Provisions to which Debtor agreed.

Against this background, the Court finds that Debtor has met his burden of demonstrating an inherent conflict under *McMahon* between the underlying purposes of the Bankruptcy Code and the enforcement of the Arbitration Provisions with regard to Counts 1 and 6 of the Complaint. Those Counts present core claims that this Court is uniquely positioned to hear and address under the authority it is granted by the Bankruptcy Code, Bankruptcy Rules, and related jurisdictional statutes. Because an inherent conflict exists, the Court has the discretion to deny Creditor's request to dismiss Counts 1 and 6 and compel Debtor to pursue them in arbitration. For the reasons previously discussed, the Court finds that Creditor's Motion to dismiss Counts 1 and 6 or compel Debtor to pursue them in arbitration shall be denied.

Debtor has not met his burden of proving the requisite *McMahon* conflict with regard to his claims in Counts 2, 3, and 4, which are grounded in state and federal non-bankruptcy law. Because no inherent conflict exists, the Court does not have discretion to deny Creditor's requests to enforce the Arbitration Provisions as to these claims. For the reasons previously discussed, this Court finds that Creditor's Motion to compel Debtor to arbitrate those claims shall be granted.

Count 5 is not a separate cause of action, but a request for remedies to which Debtor will be entitled only if he prevails on the other counts. Count 5 thus does not state a "claim" that can be referred to arbitration, and the Court finds that Creditor's request to dismiss Count 5 and compel Debtor to arbitrate it shall be denied. Count 5 shall remain pending in this adversary proceeding to the extent that it asserts remedies that could be awarded under Count 1 or Count 6. This ruling specifically does not preclude Debtor from seeking these same remedies in

arbitration to the extent that he is entitled to them based upon the causes of action he asserts in Counts 2, 3, and/or 4.

**III.      This Adversary Proceeding shall be stayed as to Counts 2, 3, and 4 of the Complaint, but not as to Counts 1 and 6.**

Section 3 of the FAA requires courts to stay the trial of arbitrable issues while arbitration is pending.  9 U.S.C. § 3.  Therefore, this adversary proceeding shall be stayed as to Debtor's claims in Counts 2, 3, and 4 of the Complaint pending the results of arbitration.

Section 3 of the FAA does not require a stay of proceedings as to claims that are not being arbitrated.  The Court will proceed to adjudicate Counts 1 and 6.

## ORDER

For the reasons stated herein, Creditor's Motion is GRANTED in part and DENIED in part as follows:

1.      The Motion is DENIED to the extent that it seeks to compel arbitration of Count 1 and Count 6.

2.      The Motion is GRANTED to the extent that it seeks to compel arbitration of Count 2, Count 3, and Count 4.  To the extent that Debtor wishes to pursue those claims, he shall do so in arbitration as required by the Arbitration Provisions.  Counts 2 through 4 are hereby stayed pending that arbitration's conclusion.

3.      The Motion is DENIED to the extent that it seeks to compel arbitration of Count 5, which shall continue to remain pending in this adversary proceeding to the extent that it asserts remedies that could be awarded under Count 1 or Count 6; provided, however, that Debtor also may seek the remedies described in Count 5 in arbitration to the extent that he is entitled to them under the claims he asserted in Count 2, Count 3, and/or Count 4.

IT IS FURTHER ORDERED that the parties shall jointly tender a proposed scheduling order herein within 21 days.

21

The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Friday, April 07, 2017**
(tnw)